Todd MCKINNEY, Individually, and Alba Grace McKinney, by her next friend Todd McKinney, Petitioners-Appellants,

v.

Lacon SMITH, Respondent-Respondent.

No. SD 34491

Missouri Court of Appeals, Southern District, **Division One.**

Filed: June 15, 2017

Attorney for Appellant: Kimberly F. Lowe of Waynesville, MO.

Attorneys for Respondent: Steven A. Privette and Zane A. Privette of Willow Springs, MO.

JEFFREY W. BATES, P.J.

Todd McKinney (Father) appeals from the trial court's judgment, which: (1) declared him the biological father of A.G.M. (Child); (2) granted Father joint legal and joint physical custody of Child with Lacon Smith (Mother); and (3) ordered Father to pay $1,500 in partial attorney fees and costs to Mother. Father presents three points on appeal, which contend the awards of "primary residential custody" and partial attorney fees are against the weight of the evidence. Because this Court is not left with a firm belief that the judgment is wrong, we affirm.

### Factual and Procedural Background

Child was born in September 2013. Mother and Father are Child's biological parents. Father has lived and worked in Houston, Missouri at all times relevant to this case. At the time of Child's birth, Mother also lived in Houston. In October 2013, Father filed a petition, individually and as next friend for Child, against Mother pursuant to the Uniform Parentage Act seeking, *inter alia*: (1) a declaration of paternity; and (2) entry of an order of custody and visitation in accordance with his proposed parenting plan. Mother filed an answer and counter-petition that agreed with Father's request for a declaration of paternity, but set forth an alternative parenting plan. Each party also moved for attorney fees and costs.

Mother and Father later filed motions for temporary orders regarding custody. Following a hearing, the trial court entered a temporary order in July 2014 that awarded the parties joint physical and joint legal custody, ordered residential placement with Mother, and granted Father periods of unsupervised visitation. With the trial court's permission, Mother immediately moved to Little Rock, Arkansas to attend law school. Since that time,

Child has resided with Mother in Little Rock, where Mother is currently employed and attending law school. Mother's expected graduation date is December 2018.

The case was tried to the court. Father's First Amended Parenting Plan suggested joint legal and joint physical custody of Child with Mother receiving alternating weekends during the school year and four weeks during the summer. Mother's Second Amended Parenting Plan suggested joint legal and joint physical custody of Child with Father receiving two weekends a month during the school year and alternating weeks during the summer. The court rejected both parenting plans and crafted its own, awarding Mother and Father joint legal and joint physical custody pursuant to the following schedule:

1. Prior to [Child] attending Kindergarten, Father shall have custodial time with [Child] as follows:

a. The second weekend of every month, commencing on the second Friday of the month, from 6:00 p.m. Friday until the following Sunday at 6:00 p.m.

[b.] A seven consecutive day period commencing the Sunday following Father's weekend as outlined in paragraph (a) from Sunday at 6:00 p.m. to the following Sunday at 6:00 p.m.

2. Once [Child] begins Kindergarten, Father shall have custodial time with [Child] as follows:

a. The second, fourth and alternating fifth weekends of the month from Friday at 6:00 p.m. to Sunday at 6:00 p.m.

b. Beginning one week following the recess of school until one week prior to the commencement of the school year in the fall. During this period of time, Mother shall have alternating weekends beginning the first Friday after Father's summer custody begins from Friday at 6:00 p.m. to Sunday at 6:00 p.m.

3. Mother shall have custodial time with [Child] at all other times not specifically set forth to Father herein.

In crafting its parenting plan, the trial court also made the following findings regarding Child's best interest under § 452.375.2(1)-(8).[1]

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties:

The Court finds that each party has submitted a Parenting Plan. Mother's Second Amended Parenting Plan allows for her to have [Child] the majority of the time during the school year, with Father receiving two weekends per month during the school year and alternating weeks during the summer. Father's First Amended Parenting Plan allows for him to have [Child] the majority of the time during the school year, with Mother receiving alternating weekends of visitation during the school year and four weeks during the summer. The Court finds that this factor slightly favors Mother.

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child:

The Court finds that both parents have the present ability and willingness to perform their functions as mother and father of the needs of [Child]. The Court further finds that [Child] has a continuing, frequent and

---

1. The numerated factors in § 452.375.2(1)-(8) are set out in relevant part below, followed by the indented findings of the trial court relevant to each factor. Unless otherwise noted, all statutory references are to RSMo Cum. Supp. (2013). All rule references are to Missouri Court Rules (2017).

meaningful relationship with both parents. The Court finds that this factor favors neither party.

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests:

> The Court finds that both parents have daily contact with [Child] while in their respective physical custody periods. All evidence presented indicates [Child] is well bonded with both parents. Further, the evidence presented to the Court indicated [Child] also had a close relationship with the families of both parents. The Court finds that this factor favors neither party.

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent:

> The Court finds that Mother has been allowing Father more visitation time than the Temporary Order called for him to receive. The Court also finds that Mother has allowed Father's family to visit with [Child] during her custody periods. The Court finds that Father has not allowed Mother or Mother's family time during his custody periods. The Court finds that this factor favors Mother.

(5) The child's adjustment to the child's home, school, and community:

> The Court finds that [Child] has adjusted well to her current home, school and community and has resided with Mother in her present home since August 2014. Further, [Child] has continuously resided with Mother since her birth. The Court further finds it is in [Child's] best interest for Mother's home to be designated [Child's] primary residence for educational and mailing purposes. The Court finds that this factor favors Mother.

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved:

> There was no evidence or testimony presented to the Court as to any mental or physical health issues for the Father or Mother. The Court finds that this factor favors neither party.

(7) The intention of either parent to relocate the principal residence of the child:

> The Court finds that Mother's move to Arkansas was approved by this Court's Temporary Order of July 30, 2014. The Court finds that neither party has a present intention to relocate. The Court finds that this factor favors neither party.

(8) The wishes of a child as to the child's custodian. The fact that a parent sends his or her child or children to a home school, as defined in section 167.031, shall not be the sole factor that a court considers in determining custody of such child or children:

> There was no evidence presented concerning the wishes of the minor child as to her custodian. The Court finds that this factor favors neither party.

This appeal followed.

### Standard of Review

▇▇▇ In this court-tried case, our review is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), and Rule 84.13(d). *Schubert v. Trailmobile Trailer, L.L.C.*, 111 S.W.3d 897, 899 (Mo. App. S.D. 2003). The judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Pelligreen v. Wood*,

111 S.W.3d 446, 450 (Mo. App. E.D. 2003). To prevail on an against-the-weight-of-the-evidence challenge, a litigant must show that the trial court could not have reasonably found, from the trial record, the presence of a fact necessary to uphold the judgment. *Ivie v. Smith*, 439 S.W.3d 189, 206 (Mo. banc 2014). In such a challenge, the trial court may believe all, part or none of the evidence, and we must defer to its factual findings when the issues of fact are contested and when the facts ultimately found depend on credibility determinations. *Id.* "The against-the-weight-of-the-evidence standard serves only as a check on a circuit court's potential abuse of power in weighing the evidence, and an appellate court will reverse only in rare cases, when it has a firm belief that the decree or judgment is wrong." *Id.*

■ This Court "must presume the trial court awarded custody in the child's best interests, due to the trial court's superior position in judging the credibility of the witnesses, along with their character, sincerity, and other intangibles not completely revealed by the record." *In re Marriage of Sisk*, 937 S.W.2d 727, 730 (Mo. App. S.D. 1996). "We will not set aside a trial court's judgment on child custody unless we firmly believe that the decree is wrong and that the child's welfare requires another disposition." *In re Marriage of Sutton*, 233 S.W.3d 786, 789 (Mo. App. E.D. 2007).

### Discussion and Decision

#### Points 1 and 2

■ We address Points 1 and 2 together as they raise similar issues and fail for the same reason. Both points allege that the trial court erred in "awarding primary res-

idential custody" to Mother, rather than Father, because the "uncontroverted facts" show that this determination was against the weight of the evidence. Point 1 sets forth evidence favoring Father under the factors in § 452.375.2, and Point 2 highlights other asserted "egregious behavior" by Mother.[2]

■ Father's against-the-weight-of-the-evidence challenge requires a specific four-step analysis. *Flora v. Flora*, 426 S.W.3d 730, 738 (Mo. App. S.D. 2014). Father must:

(1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;

(2) identify all of the favorable evidence in the record supporting the existence of that proposition;

(3) identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and,

(4) demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

*Houston v. Crider*, 317 S.W.3d 178, 187 (Mo. App. S.D. 2010).

Under Step 1, Father challenges the award of "primary residential custody" to Mother as being against Child's best interest, but the trial court made no such award. As a result, Father's points do not clearly identify the trial court ruling he challenges, and consequently, they preserve nothing for review. Rule 84.04(d); *In*

---

**2.** Neither Point 2 nor Point 3 is accurately restated prior to each point's corresponding argument. *See* Rule 84.04(e) ("The point re-lied on shall be restated at the beginning of the section of the argument discussing that point.").

*re Marriage of McCoy*, 818 S.W.2d 322, 325 (Mo. App. S.D. 1991). This Court may, however, review the issue on the merits if Father's points, in conjunction with his argument, are sufficient to determine the issue being raised. *In re Holland*, 203 S.W.3d 295, 299 (Mo. App. S.D. 2006). Turning to Father's argument, a recent observation from the western district of this Court accurately frames the issue in this case:

First, the court did not award any party "residential custody" of any child. The court awarded joint custody of the children to the parents and devised its own parenting plan. This Court has addressed the necessity of using statutory language on numerous occasions. *See, e.g., Loumiet v. Loumiet*, 103 S.W.3d 332, 336-38 (Mo. App. [W.D.] 2003) (holding that, despite tendency of courts and lawyers to use such improper terms as "primary residential custody" and "primary physical custody" when "joint physical custody" was awarded, the only types of custody provided for in section 452.375.1(1) are "joint legal," "sole legal," "joint physical," or "sole physical" or "any combination thereof"); *see also Robertson v. Robertson*, 228 S.W.3d 624, 625 n.1 (Mo. App. [W.D.] 2007); *Aurich v. Aurich*, 110 S.W.3d 907, 912 (Mo. App. [W.D.] 2003). Recently, the Eastern District of this Court reiterated: "For over ten years, our appellate courts have, without exception, sternly admonished the use of 'primary physical custody.'" *Morgan v. Morgan*, 497 S.W.3d 359, 366 (Mo. App. [E.D.] 2016). "'[C]ustody,' as defined ... does not include 'primary physical custody' as a statutorily permissible physical custodial arrangement, only joint or sole physical custody[.]" *Id.* (citing *Loumiet*, 103 S.W.3d at 338). That Court further observed that "[t]he conundrum the foregoing terminology causes [our] courts cannot be overstated." *Id.* at 367. Nei-

ther will the Court be misled by reference to the section 452.375.5(1) designation of a parent's address for mailing and education purposes for a child as a substitute for arguing about "primary or residential custody." *See Loumiet*, 103 S.W.3d at 339-40. The ultimate issue in this case is whether the parenting time awarded the parties herein is in the best interest of the child. *See id.* at 340.
*Cox v. Cox*, 504 S.W.3d 212, 216 (Mo. App. W.D. 2016) (brackets in original and footnote omitted).

With that clarification in mind, we turn to an equally deficient Step 2. Though Father's argument presupposes that substantial evidence supported the trial court's award of parenting time, he makes no attempt to set forth any evidence favorable to the judgment. *See Pasternak v. Pasternak*, 467 S.W.3d 264, 270 n.4 (Mo. banc 2015) ("argument that a judgment is against the weight of the evidence presupposes that there was substantial evidence but it was outweighed"); *J.A.R. v. D.G.R.*, 426 S.W.3d 624, 630 (Mo. banc 2014) ("claim that the judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment"). To note just two glaring examples, Father fails to mention any of Father's employer's testimony concerning Father's substantial time constraints throughout the school year due to teaching and coaching football. Nor does Father attempt to set forth any of Mother's statements supporting the judgment (though she provided 144 pages of testimony).

Step 3 fares no better. Father does identify evidence in the record contrary to the trial court's award of parenting time, but he does not resolve all conflicts in testimony in accordance with the trial court's implicit credibility determinations. Which parenting plan was in Child's best interest was a fact question that was contested in a two-day trial, with Father presenting four

witnesses and Mother presenting two, all of whom were vigorously cross-examined. *See White v. Dir. of Revenue*, 321 S.W.3d 298, 308 (Mo. banc 2010) (setting forth the ways in which evidence may be contested). Because that fact question was contested, we must defer to the trial court's credibility determinations and its prerogative to believe all, part or none of the evidence offered to prove that fact. *Ivie*, 439 S.W.3d at 206. As a result, Father's argument— resting largely on testimony that we must assume the trial court did not credit—fails to comply with Step 3.[3]

■ Having established that Father failed to follow any of the preceding steps, it goes without saying that Step 4 remains unsatisfied. To make a successful against-the-weight-of-the-evidence challenge, Father must do more than simply identify evidence favorable to him; he must first identify the evidence favorable to the judgment and then show "why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in [the challenged factual] proposition." *Houston*, 317 S.W.3d at 187. Father's failure to comply with these critical steps "strips [his] purported demonstration of any analytical val-

ue or persuasiveness." *Id.* at 189. This Court may not complete the missing analytical steps on Father's behalf without impermissibly acting as his advocate. *Id.*

The trial court set forth a well-reasoned parenting plan in a commendable effort to balance Child's need for frequent, continuing and meaningful parental contact with her need for a stable home and educational environment. That custody determination is presumed correct, and Father has presented us with no basis to consider, much less determine, that it is against the weight of the evidence. Because this Court is not left with a firm belief that the judgment is wrong, Points 1 and 2 are denied.

### Point 3

■ The trial court awarded Mother $1,500 "for partial attorney fees and to reimburse Mother for the deposition costs, excluding travel costs, for the deposition of" Ms. Ward, the owner of Child's daycare in Little Rock.[4] In Point 3, Father argues that the trial court "erred in awarding attorney's fees to [Mother] and in failing to award attorney's fees to [Father] ... because the weight of the evidence favors awarding him attorney's fees." We disagree.

Point 3 follows a similar analytical pattern as Points 1 and 2. Father: (1) chal-

---

3. The trial court made no explicit determination whether it believed much of the testimony that Father sets forth as undermining the judgment, but we must consider all fact issues upon which no specific findings were made as having been found in accordance with the result reached. Rule 73.01(c). To borrow a fitting comment: "It seems obvious, from the findings and conclusions contained in the judgment, that the circuit court put little or no stock in various factual assertions made by Father." *J.A.R.*, 426 S.W.3d at 632 n.14. Further, to the extent Father implies the trial court's findings under § 452.375.2 are not sufficiently detailed to provide meaningful review, the argument is not preserved because it is not included in a point relied on, and

Father did not make such a claim in a motion to amend the judgment pursuant to Rule 78.07(c). *See Cule v. Cule*, 457 S.W.3d 858, 863 (Mo. App. E.D. 2015); *Walton v. City of Seneca*, 420 S.W.3d 640, 648 n.9 (Mo. App. S.D. 2013).

4. Under the Uniform Parentage Act, the trial court "may enter judgment in the amount of the reasonable fees for counsel ... and other costs of the action and pretrial proceedings ... to be paid by the parties in such proportions and at such times as determined by the court[.]" § 210.842 RSMo (2000); *see J.D.W. v. V.B.*, 465 S.W.3d 82, 88 (Mo. App. E.D. 2015).

lenges the evidentiary basis of a trial court finding as being against the weight of the evidence;' (2) gathers the evidence opposing the trial court's finding (while ignoring the trial court's implicit credibility determinations); and (3) concludes that the trial court's finding should be modified to conform to that evidence. As with Points 1 and 2, this argument fails to support Father's point and affords this Court no basis to determine the merits of his argument. *In re Marriage of Chorum*, 469 S.W.3d 484, 490 (Mo. App. S.D. 2015).

█ Moreover, the argument that Father does provide is unconvincing. "The trial court is afforded broad discretion in its award of attorney fees, and its award is presumed to be correct." *In re Marriage of Geske*, 421 S.W.3d 490, 496 (Mo. App. S.D. 2013). An award of attorney fees will not be reversed absent an abuse of discretion. *Id.* "To demonstrate such an abuse, the complaining party must show that the award was against the logic of the circumstances and was so arbitrary and unreasonable as to shock one's sense of justice." *Id.* at 496-97. An award of costs pursuant to the Uniform Parentage Act is reviewed under the same standard. *G.K.S. v. Staggs*, 452 S.W.3d 244, 247 (Mo. App. W.D. 2014).

█ Here, the trial court awarded a portion of the $1,500 to reimburse Mother for the cost of taking Ms. Ward's deposition. Father has provided this Court with only eight excerpted pages of that deposition (which were attached to his motion for sanctions), but even they do not help him. Those pages reveal that prior to Ms.

Ward's deposition, Father's attorney: (1) called Ms. Ward so frequently that she felt harassed; (2) acted "very nasty ... rude and disrespectful and demanding" toward Ms. Ward and her employees; (3) called Ms. Ward and, without identifying herself, demanded Child's records; and (4) threatened to contact governmental agencies and "get media involved" if Ms. Ward did not immediately comply.[5]

Father's remaining arguments are equally unavailing. Father claims that Mother engaged in unacceptable behavior, but he cites primarily to factual allegations made in his motion for sanctions. Those pleading allegations are not self-proving, and this Court may not rely on them as providing factual support for Father's arguments on appeal. *Epperson v. Eise*, 167 S.W.3d 229, 231 (Mo. App. E.D. 2005). Father also argues that Mother is now gainfully employed, but he fails to acknowledge that she was unemployed for the first nearly two years of this litigation.

"The trial court's attorney fee judgment in this court-tried case is presumed correct, and [Father] has the burden of demonstrating on appeal that it is erroneous." *Chorum*, 469 S.W.3d at 490. Father has not done so. Point 3 is denied.

The trial court's judgment is affirmed.

DON E. BURRELL, J.—CONCUR

MARY W. SHEFFIELD, C.J.— CONCUR

---

5. Father admitted Ms. Ward's deposition (Exhibit 40) into evidence at trial on the issue of attorney fees, but he has failed to include it in the record on appeal. As the appellant, it is Father's duty to deposit any exhibit necessary to resolve a point on appeal. *Stroh v. Stroh*, 454 S.W.3d 351, 355 (Mo. App. S.D. 2014). "Where ... exhibits are not made part of the record on appeal, such evidentiary omissions will be taken as favorable to the trial court's ruling and unfavorable to the appellant." *In re Carl McDonald Revocable Trust Dated Oct. 1, 1979*, 942 S.W.2d 926, 932 (Mo. App. S.D. 1997). Accordingly, we assume the remaining portions of Exhibit 40 would have also supported the trial court's ruling.